**BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

Slip Op. 96–191.
Court No. 95–08–01025.

United States Court of International Trade.

Dec. 9, 1996.

1996).

Pillsbury, Madison, & Sutro, LLP (Debra L. Zumwalt, San Francisco, CA, and Lynn L. Miller, Menlo Park, CA) for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York City (Bruce N. Stratvert, New York City) for defendant.

## *OPINION*

RESTANI, Judge:

This matter is before the court on a motion to dismiss for lack of jurisdiction pursuant to USCIT Rule 12(b)(1). Defendant argues that the court lacks jurisdiction over the entry in issue because plaintiff Leland Stanford Junior University ("Stanford") failed to file a protest after reliquidation and the reliquidation of the entry has become final and conclusive. Plaintiff argues that its protest to the original liquidation was still pending and, therefore, there was no reason to file another protest at reliquidation. For the following reasons, the motion to dismiss is granted.

1.  Item 9810.00.60 of the HTSUS provides for duty-free importation of scientific instruments by non-profit educational institutions for non-commercial use where there is no comparable domestic product available.

2.  15 C.F.R. § 301.4(a)(3) states in relevant part:

    (a) [T]he Commissioner shall determine:
       (3) Whether the instrument which is the subject of the application is intended for the exclusive use of the applicant institution and is not intended to be used for commercial purposes. For the purposes of this section, commercial uses would include, but not necessarily be limited to: ... any use by, or for the primary benefit of, a commercial entity....

## BACKGROUND

On June 3, 1993, Stanford applied to the United States Customs Department ("Customs") for duty-free entry of a transmission electron microscope ("TEM") purchased from a manufacturer in Holland to conduct scientific research under Item 9810.00.60 of the Harmonized Tariff Schedule of the United States, USITC Pub. 2567, Sec. XXII, ch. 98, at 32 (1993) [hereinafter "HTSUS"].[1] On November 2, 1993, Customs denied the application on the ground that it did not satisfy 15 C.F.R. § 301.4(a)(3) (1993),[2] which requires exclusive use of the imported item for non-commercial purposes and, thus, the TEM would not be classified under Item 9810.00.60. *See* Customs' Nov. 2, 1993 Letter; Compl., Ex. B. The basis for Customs' determination was Stanford's statements that "there may be collaborative research with industry," and that Stanford's "faculty and staff do on occasion carry out collaborative research with their scientific counterparts in industry," suggesting to Customs the possibility of commercial use. *Id.* Customs instead classified the TEM under subheading 9012.90.00 of the HTSUS at 6.2% *ad valorem* and liquidated the entry on March 18, 1994.

Stanford protested the classification on the grounds that the TEM should be classified under subheading 9810.00.60 allowing duty-free treatment or, in the alternative, that the TEM should be classified under subheading 9012.10.00 of the HTSUS at 4.4% *ad valorem*, with a preference for the duty-free classification.[3] On February 10, 1995, responding to Stanford's protest,[4] Customs stated:

3.  Stanford alleges that its primary basis for protest was the request for duty-free status under the subheading 9810.00.60 and that the request for the alternative classification under subheading 9012.10.00 was secondary, i.e., that this alternative was requested only in the event that the duty-free classification was disallowed. While this might be inferred from the relative duty advantages of each provision, the record does not contain an express statement of this preference. *See* Protest No. 2809–94–100266, Attach. C; Compl., Ex. I.

4.  Stanford's formal "protest" was actually filed before liquidation, but the defendant has withdrawn its challenge to jurisdiction on that ground as later submissions were considered ei-

The protest is denied in part. The electron microscope is affirmed to be ineligible for duty-free treatment under subheading 9810.00.60, HTSUS, inasmuch as there is commercial use of the microscope as shown by collaboration with industry in research utilizing the microscope. However, we agree with the protestant's item (2) that the electron microscope is properly classified under the alternative classification 9012.10.00, HTSUS, inasmuch as duty-free entry is denied under subheading 9810.00.60, HTSUS.

Cust.HQ Rul. 558673, at 6–7 (Dec. 14, 1994); Compl., Ex. A. Accordingly, Customs reliquidated the TEM under subheading 9012.10.00 at the 4.4% rate. Stanford now seeks judicial review of Customs' partial denial of its protest.

### DISCUSSION

Stanford argues that the court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (1994) which provides:

> The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515].

Customs denied the request for duty-free treatment under subheading 9810.00.60, but granted Stanford's request to reclassify the TEM under subheading 9012.10.00 with the lower rate of 4.4%.

Although Customs expressly stated that the protest is "denied in part," under case law this statement is not dispositive. The court must look to what Customs actually did. Stanford argues that Customs' reliquidation did not involve a determination regarding the duty-free status of the TEM; it only involved the appropriateness of classification 9012.10.00 as compared to 9012.90.00. Stanford relies upon *Ataka America, Inc. v. United States*, 79 Cust.Ct. 135, 137 (1977), for the proposition that an original liquidation is only nullified as to the question with

which the reliquidation dealt. "As to all other matters, not the subject of reliquidation, the original liquidation remain[s] in full effect." *Id.* Stanford, therefore, asserts that the original liquidation is the final protestable decision on the question of duty-free status.

In *Ataka*, the reliquidation did not involve a change in classification. *Id.* at 135. The original liquidation dealt with an assessment of duties under subheading of 712.49 of the Tariff Schedule of the United States ("TSUS") for the imported gas chromatographs. *Id.* Customs also imposed a supplemental duty on this entry pursuant to a presidential proclamation. *Id.* On January 3, 1974, the plaintiff in *Ataka* protested the imposition of the supplemental duty. *Id.* On June 24, 1974, Customs reliquidated the merchandise under a reduced appraised value, but neither changed the classification nor addressed the previously protested issue of the supplemental duty. *Id.* On August 9, 1974, Customs denied the plaintiff's protest.[5] The plaintiff filed a second protest following reliquidation, again contesting the assessment of the supplemental duty. *Id.* The court held that the plaintiff's protest of the reliquidation was improper because the issue of the supplemental duty's validity was not the subject of the reliquidation. *Id.* at 136.

Unlike in *Ataka*, here, Customs did decide the issue of duty-free status both explicitly and implicitly. First, in its reliquidation decision, Customs expressly affirmed its ruling that the TEM was ineligible for duty-free treatment, which was itself a classification ruling. *See* Cust. HQ Rul. 558673, at 6; Compl., Ex. A. Second, Stanford's protest dealt only with the issue of classification. *See* Protest No. 2809–94–100266; Compl., Ex. F. The protest contested Customs' classification of the TEM under subheading 9012.90.00, with a duty rate of 6.2%, and requested in the alternative either classification under subheading 9810.00.60, the duty-free provision, or subheading 9012.10.00, with a duty rate of 4.4%. *See* Protest No. 2809–

---

ther a sufficient protest or post-liquidation ratifications of the premature protest.

**5.** Although the plaintiff in *Ataka* properly filed a protest against the original liquidation and time-

ly filed a summons, the plaintiff's failure to prosecute that action led to its dismissal in February 1977. *Ataka*, 79 Cust.Ct. at 137 n. 3.

94–100266, Attach. C; Compl., Ex. I. Customs, therefore, decided the issue of classification by choosing to reliquidate the TEM under 9012.10.00 instead of under its original classification of 9012.90.00 or Stanford's alternative classification of 9810.00.60. Under *Ataka*'s holding, by changing the classification in its reliquidation, Customs nullified the original liquidation. *See* 79 Cust.Ct. at 136.

Moreover, the facts here are analogous to the facts presented in *Sanyo Elec., Inc. v. United States,* 81 Cust. Ct. 114, 114 (1978). In *Sanyo Elec.,* the plaintiff protested Customs' classification of imported merchandise and offered two alternative classifications. *Id.* Customs reliquidated the merchandise under one of the alternative classifications requested in the plaintiff's protest. *Id.* The plaintiff subsequently filed a civil action claiming that as Customs rejected one classification while choosing the other classification, its protest was denied in part. *Id.*

The court in *Sanyo Elec.* stated that the plaintiff's argument would lead to absurd results. *Id.* at 115. Under the plaintiff's analysis, a protest with alternative claims could never be granted in whole unless all claims are granted as "even the selection of the alternative most favorable to the protesting party would still be a denial in part." *Id.* The court in *Sanyo Elec.,* therefore, held that, "[w]hen the decision is entirely changed to conform to a decision sought by the protest, that protest has been completely granted." [6] *Id.* Accordingly, the action was dismissed as no part of the original classification chosen by Customs in the original liquidation remained in effect because Customs reliquidated the merchandise under one of the plaintiff's requested classifications. [7] *Id.*

As in *Sanyo Elec.,* here, no part of the original classification remains in effect. The original liquidation was under subheading 9012.90.00 at 6.2% and, after reliquidation, the TEM was classified under subheading 9012.10.00 at 4.4%, one of the alternative classifications proposed by Stanford.

Stanford attempts to distinguish the facts here from those of *Sanyo Elec.* by alleging that unlike the protest in *Sanyo Elec.,* Stanford's protest indicated a clear preference for the duty-free classification of subheading 9810.00.60 over the alternatively requested classification of subheading 9012.10.00 at 4.4%. Stanford claims that in *Sanyo Elec.,* the plaintiff offered the two alternative classifications with no manifest preference between the two. According to *Sanyo Elec.,* this has no bearing on the issue of whether or not a new protest needs to be filed after reliquidation. The court explained that:

> If a party's preference for a rejected alternative claim is so strong that it wishes to pursue the claim even following the granting of another alternative claim, then its true quarrel is with its own claim and is not cognizable in a civil action designed to resolve disputes regarding decisions of the appropriate customs officer. The proper procedure would be for the party to advance its preferred alternative claim in a new protest against the revised decision following the reliquidation of the entry.

*Id.* Therefore, if Stanford had a strong preference for the duty-exempt classification, as it has indicated, it should have protested the reliquidation within 90 days thereof in accordance with 19 U.S.C. § 1514(c)(2)(A) (1988) and 19 C.F.R. § 174.12(e)(1) (1993). [8] [9]

6. An example of an appealable denial in part is a denial as to some entries but not others, or granting an appraisement change but denying a classification change.

7. This should be contrasted with *Ataka* where Customs' decisions involved two different categories of protest, that is, 19 U.S.C. § 1514(a)(1) (1976) (appraisement) and 19 U.S.C. § 1514(a)(2) (classification and rate of duty).

8. Stanford also makes an argument that it would have been futile to file a protest after reliquidation with regard to the duty-free classification that they offered in their protest after the original

liquidation. In light of the *Sanyo Elec.* holding, and because futility is not a valid reason for failing to meet a jurisdictional requirement, the court rejects this argument.

9. Although the *Sanyo* precedent is not new, it is unlikely plaintiffs were aware of it or indeed of the other technical requirements of protest procedures. (Note the ineffective preliquidation attempt to protest.) To aid the uninitiated, it would be helpful if Customs' regulations covered these matters with greater particularity, if Customs did not refer to a change of classification as a denial, and if Customs' response to a protest

Accordingly, defendant's motion to dismiss based on lack of jurisdiction is granted.

## JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

**IT IS HEREBY ORDERED:** that the motion to dismiss is granted and this action is hereby dismissed.

advised the party that in order to preserve its rights it must protest the changed classification.